

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Coke Stevenson
Governor of Texas
Austin, Texas

Dear Governor Stevenson:

Opinion No. O-4542
Re: Property officer to supervise
Civilian Defense property.

Your request for opinion has been received and care-
fully considered by this department. We quote from your re-
quest as follows:

"On April 13, 1942, I requested an opinion
on the following question:

"'Can the Governor name an official of
the State Government as State Property
Officer with the duties set out as stated
and would it be legal for him to make the
bond required of such an officer?'

"This request was made in the light of Re-
gulations No. 1 of the United States Office of
Civilian Defense entitled, 'Governing Loans of
Equipment and Supplies to Civil Authorities.'

"In view of the fact that the United States
Office of Civilian Defense has now issued sup-
plementary rules in this regard which affect
the question, I respectfully withdraw my request
of April 13, 1942, for a decision on the point
stated, and new request your opinion on the
following questions:

"(1) Can the Governor appoint a private
individual as State Property Officer?

"(2) Can the Governor appoint the Adju-



APPROVED
OPINION
COMMITTEE

BY_____
CHAIRMAN

Honorable Coke Stevenson, Page 2

tant-General as State Property Officer for the purposes mentioned?

"(3) Can the Governor appoint an employee on the staff of the Adjutant-General as State Property Officer?

"(4) Can the Governor's Office pay the bond premium required for the State Property Officer?

(5) Can the Adjutant-General's Office pay the bond premium required for the State Property Officer?

"(6) Can the Governor accept the offer of the Regional Office of Civilian Defense to have a member of the Office of Civilian Defense Staff perform the designated functions of a State Property Officer? (Reference is made to a letter to the Governor, under date of June 22, 1942, from Milton T. Gregory, Assistant Regional Director, Eighth Civilian Defense Region, copy of which is attached)."

The Director of the Office of Civilian Defense, pursuant to authority vested in him by Executive Order No. 8757 dated May 20, 1941, and pursuant to Section 1 of the act approved January 27, 1942, and in accordance with Article 13 of Executive Order No. 9088 dated March 6, 1942, authorizing the Director of Civilian Defense to make and issue such rules, regulations and orders as he may deem necessary or desirable to carry out the purposes of the aforementioned act of January 27, 1942 (relating to the providing of protection of persons and property from bombing attacks, sabotage or other war hazards), has made and issued regulations concerning the distribution and supervision of Civilian Defense equipment allotted by the Federal Government to State municipalities and authorities. Regulation No. 1 of said Director reads in part as follows:

"1. GENERAL PROGRAM

"(a) The Director of Civilian Defense will from time to time make available to localities

of the United States, its territories and possessions, equipment and supplies for the protection of persons and property from bombing attacks, sabotage, and other war hazards.

"(b) Such equipment and supplies will be made available by loans to communities within the States which communities may in turn distribute, under the direction of the Local Defense Council, the equipment and supplies to responsible and qualified individuals or organizations, all in accordance with regulations issued by the Director of Civilian Defense.

"(c) Each borrowing community will designate a Local Property Officer who will act as custodian of the property and will be responsible therefor to the Office of Civilian Defense. State Property Officers are to be appointed to maintain records with respect to all property loaned in their respective States or areas, and property may, in certain instances, be delivered to the communities through such State Property Officers. State Property Officers and Local Property Officers will deal with and distribute the property only in the manner prescribed by the Director of Civilian Defense.

"(d) Regional Directors of the Office of Civilian Defense are to supervise the activities of State Property Officers and Local Property Officers.

"(e) The equipment and supplies shall at all times be at the disposition of the United States Government, and the United States Government shall retain its full rights as owner, lessee or borrower, as the case may be, of such property. To such extent as may be practicable, all such supplies and equipment shall at all times be clearly and distinctly marked as the property of, or under the control of, the United States Government, Office of Civilian Defense.

"(f) These regulations governing such loans are part of the agreement of each community receiving such a loan, and in addition should serve as a guide to State and Local Property Officers in the performance of their duties.

"2. DEFINITIONS.

"(a) Civil Authority means any State or community, as hereinafter defined, or any duly elected or appointed official, agent, board, commission, or other body of persons duly authorized to act on behalf of any State or community.

"(b) State means any State or territory or possession of the United States, and, in addition, means any area designated by the Director of Civilian Defense as a special area for purposes of these regulations.

"(c) Community means any municipality, town or village, or any other political subdivision of any State, or any area designated by the Director of Civilian Defense as a community for purposes of these regulations.

"(d) Chief Executive Officer means the Mayor of a community or other person or body exercising paramount local executive power.

"(e) Local Defense Council means the body duly appointed by the duly authorized appointive authority to be responsible for civilian defense in the community.

"(f) Director of Civilian Defense means the Director of the Office of Civilian Defense appointed by the President of the United States.

"(g) Federal Law means the 'Act to provide protection of persons and property from bombing attacks in the United States, and for other purposes' approved January 27, 1942, and Acts supplemental thereto relating to the Office of Civilian Defense, and Executive Orders issued

pursuant to such Acts or relating to the Office of Civilian Defense.

"(h) Property means equipment and supplies belonging to, or under the control of, the Office of Civilian Defense.

"(i) Accountability devolves upon any person who is required to maintain records and a property account with respect to property, whether or not in the custody of such person, and is discharged by the maintenance of proper records and accounts and by the production of proper receipts for all property received by such person but no longer in his custody.

"(j) Responsibility devolves upon any person who has custody of property or the duty to supervise others having such custody, and is discharged by the exercise of good faith and due care in the performance of all specified duties.

"3. CERTIFICATE AND AGREEMENT OF CIVIL AUTHORITY OF BORROWING COMMUNITY.

"Each community to which a loan of property is to be made by the Director of Civilian Defense, shall, prior to the making of such loan, furnish to the Office of Civilian Defense a Certificate and Agreement, on OCD Form No. 501 duly executed by its Chief Executive Officer, as the civil authority of the community duly authorized to act in such respect, which Certificate and Agreement shall include, among other things, a certification that the community is in need of, but unable to provide, the property therein specified, an agreement on behalf of the community as to the maintenance, use, distribution and return of the property, and a certification as to the appointment, by the duly authorized appointive authority, of a designated Local Property Officer as the agent of the community authorized to receive the property on behalf of the community and to perform the duties prescribed with respect thereto by the Director of Civilian Defense.

Each Local Property Officer shall agree, on OCD Form No. 501, to comply with all rules, regulations, orders, and instructions of the Director of Civilian Defense. Such Certificates and Agreements shall be executed in duplicate, one copy to be filed with the Office of Civilian Defense, Washington, D. C., and one copy with the Regional Director.

"* * * *

"5. APPOINTMENT AND TENURE OF STATE AND LOCAL PROPERTY OFFICERS.

"(a) As a condition precedent to the making of any loan to a community in any State, the Governor of such State shall duly appoint a State Property Officer. In the event that an area is designated as a special area by the Director of Civilian Defense, a State Property Officer thereof shall, as a condition precedent to a loan to any community therein, be duly appointed by the Governor of the State in which the largest city in such area is located, and in such case the State Property Officer for the State or States in which such special area is located shall have no duties or accountability with respect to the said special area. The duties and obligations of each State Property Officer shall be as set forth in these regulations or as otherwise prescribed by the Director of Civilian Defense. Each State Property Officer shall hold office during the pleasure of the appointing Governor. Appointments of State Property Officers shall be on OCD Form No. 500, executed in duplicate, one copy to be filed with the Office of Civilian Defense, Washington, D. C., and one copy with the Regional Director; each State Property Officer shall agree thereon to comply with all rules, regulations, orders, and instructions of the Director of Civilian Defense.

"(b) As a condition precedent to the making of any loan to a community, the duly authorized appointive authority of such com-

munity shall duly appoint a Local Property Officer to serve as the duly authorized agent of the community to receive such loan upon such terms and conditions as shall be prescribed by the Director of Civilian Defense. The duties and obligations of each Local Property Officer shall be as set forth in these regulations or as otherwise prescribed by the Director of Civilian Defense. Each Local Property Officer shall hold office during the pleasure of the local appointive authority.

"6. BONDING OF PROPERTY OFFICERS.

"(a) The Office of Civilian Defense, Washington, D. C., requires State Property Officers to be bonded in the amount of $10,000 to the Federal Government, and the obligation for the premium thereon shall be assumed by the State Property Officer or by the State designating any such State Property Officer.

"(b) The Office of Civilian Defense, Washington, D. C., requires Local Property Officers to be bonded to the Federal Government, in the amount of $10,000 in communities whose population is 200,000 or more, and $5,000 in other communities, and the obligation for the premium thereon shall be assumed by the Local Property Officer or by the community for which the Local Property Officer has been designated.

"(c) Each such bond shall be executed on OCD Form No. 502 and by such corporate surety as shall be acceptable to the Director of Civilian Defense.

"(d) Bonds of State and Local Property Officers shall be executed in triplicate, two copies to be filed with the Office of Civilian Defense, Washington, D. C., and one copy to be filed with the Regional Director.

"7. DISTRIBUTION OF CIVILIAN DEFENSE
PROPERTY.

"Each Local Property Officer shall dis-
tribute the property received by him, as the
authorized agent of his community, to respon-
sible and qualified indivduals or organiza-
tions in his community or in the territory
adjacent thereto, in such amounts and in such
manner as the Local Defense Council shall
deem advisable in order to comply with the
requirements of Federal Law, including the
requirement that such property shall be dis-
tributed for the adequate protection of per-
sons and property from bombing attacks,
sabotage, or other war hazards: Provided,
however, That such distribution shall at all
times be subject to and in accordance with
such rules, regulations, orders, and instruc-
tions as the Director of Civilian Defense may
make with respect thereto. Each Local Prop-
erty Officer shall obtain from each indivi-
dual or organization to whom any property
is distributed, whether for further distri-
bution or for their own use, as well as from
any transferee of such property, a duly exe-
cuted OCD Form No. 519, which shall constitute
a receipt for the property and an agreement
with respect to the protection, maintenance,
use, and return thereof in accordance with
all rules, regulations, orders, and instruc-
tions of the Director of Civilian Defense.

"8. DUTIES OF STATE PROPERTY OFFICERS.

"The duties of each State Property Offi-
cer are to:

"(a) Receive all property shipped to him
by the Office of Civilian Defense for communi-
ties within his State or area, and cause such
property to be delivered forthwith and without
delay to the Local Property Officers of the
respective communities, in such amounts and
manner as shall be specified in any order or
instruction issued by the Office of Civilian
Defense, Washington, D. C.

"(b) Maintain an adequate record of all property delivered to him and all property delivered to Local Property Officers within his State or area, and preserve all receipts for such property.

"(c) Prepare and submit to the Office of Civilian Defense, Washington, D. C., and to his Regional Director, reports and information in such form and manner as required by them, respectively, as to the location, custody, condition, and status of all property in his State or area.

"(d) Supervise the examination and checking of all property shipped to or by him.

"(e) Supervise the storage and handling of all property in his custody, and make arrangements so that such property may be inspected at any time by the representatives of the Office of Civilian Defense.

"(f) Make arrangements, satisfactory to the Office of Civilian Defense, Washington, D. C., adequately to store, handle, maintain, protect, deliver, and return all property in his custody, and provide suitable facilities, at the expense of his State, for the proper storage, handling, protection, delivery, and return of all such property: Provided, however, That he is not required to obtain fire, burglary, or other insurance with respect to any property.

"(g) Make arrangements, satisfactory to the Office of Civilian Defense, Washington, D. C., for the prompt return of any property received by him (unless lost, destroyed, or consumed in the course of its use in accordance herewith and proper Report of Adjustment with respect thereto has been filed with and approved by the Office of Civilian Defense) and in his custody if and when recalled for any reason whatsoever by the Office of Civilian Defense, Washington, D. C., and cause such property forth-

with and without delay to be expeditiously
transported and delivered to or upon the order
of the Office of Civilian Defense, Washington,
D. C.; Provided, however, That any reason-
able expense incident to the return of such
property will be borne by the Office of Civil-
ian Defense upon the presentation of duly
verified vouchers.

"(h) Be accountable to the Office of
Civilian Defense for all property within his
State or area.

"(i) Be responsible to the Office of
Civilian Defense for the performance of his
duties, including the storing, handling, main-
taining, protecting, delivering, and returning
of all property received by him or his agents
until such property shall have been delivered
by him to and received by Local Property Offi-
cers in accordance with rules, regulations,
orders, and instructions of the Director of
Civilian Defense.

"(j) Perform such other duties as may be
necessary in administering his office, or as
shall be prescribed by the Director of Civilian
Defense.

"State Property Officers may appoint
agents to assist in the performance of their
duties, but shall be responsible for the acts
or omissions of such agents.

". . . ."

Executive Order No. 9088 reads in part as follows:

"No. 9088

"PRESCRIBING REGULATIONS CONCERNING CIVILIAN DEFENSE

"By virtue of the authority vested in me
by the act entitled 'An Act to provide protec-
tion of persons and property from bombing at-
tacks in the United States, and for other pur-
poses', approved January 27, 1942, and as

Honorable Coke Stevenson, Page 11

President of the United States and Commander
in Chief of the Army and Navy, I hereby pre-
scribe the following regulations concerning
civilian defense:

"1.  Such funds as may be available to
enable the Director of Civilian Defense to
carry out the provisions of the aforementioned
act of January 27, 1942, shall be used only
for acquiring facilities, equipment and sup-
plies necessary to provide for the adequate
protection of persons and property from bomb-
ing attacks, sabotage and other war hazards
in the United States, its territories and
possessions; for providing services necessary
to facilitate effective use of all such facil-
ities, equipment and supplies; for defraying
expenses of procurement (including research
and development), inspection, transportation,
storage, maintenance, protection, distribu-
tion, recovery and return of facilities,
equipment and supplies; and for accounting
and administration with respect to such
facilities, equipment and supplies, services
and expenses.

"2.  The Director of Civilian Defense
from time to time within the limitations of
such funds as may be available to the Office
of Civilian Defense shall determine the gen-
eral types and respective quantities of
equipment which he shall deem necessary and
desirable to be purchased.  In making such
determinations, the Director shall be afford-
ed the advice and assistance of the War De-
partment and may make use of any other tech-
nical assistance, studies, reports or in-
formation which may be available to him.

"3.  The Director of Civilian Defense
shall notify the Secretary of War, or such
chiefs of services, bureaus or divisions of
the War Department as the Secretary may di-
rect, of each determination by the Director
of the necessity of and desirability for the
purchase of equipment in accordance with
paragraph 2 of this order.  The War Depart-
ment shall thereupon undertake all steps

necessary for the procurement as promptly
as possible of equipment of the type and
in the quantity specified by the Director
of Civil Defense.

"4. In connection with the procure-
ment of items of equipment for the Office
of Civilian Defense the War Department shall
undertake all necessary research, develop-
ment and standardization of such equipment;
shall contract for the purchase of such
equipment; shall conduct all necessary in-
spections during and upon completion of
manufacture or assembly; and shall see that
all equipment conforms to specifications
prior to acceptance.

"5. The War Department shall keep the
Director of Civilian Defense informed of
specific items of equipment being procured
and of the approximate or probable dates for
delivery thereof, and the Director of Civil-
ian Defense shall furnish to the War Depart-
ment timely instructions as to the place
or places at which such equipment shall be
delivered to the Office of Civilian Defense
or upon its order. The War Department shall
make all necessary and appropriate arrange-
ments for the shipment of such equipment
to the place or places so designated and
shall be responsible for such equipment
until delivery at such place or places.
Thereafter the Office of Civilian Defense
shall be responsible for such equipment,
including its storage, maintenance, protec-
tion, issue and distribution.

"6. There shall be made available to
the War Department, from time to time, with-
in the limitations of such funds as may be
available to the Office of Civilian Defense,
sufficient funds to cover all proper expenses
incurred by the War Department in pursuance
of this order, including costs of research,
development, procurement, inspection, trans-
portation, and furnishing of facilities and
services. The War Department shall have au-

thority to pay all such expenses out of the
funds so made available to it. The War De-
partment shall keep the Office of Civilian
Defense informed from time to time of all
expenditures made from, and obligations in-
curred against, the funds so made available
to it.

"7. In addition to facilities, equip-
ment and supplies provided for the Office of
Civilian Defense through the War Department
as hereinbefore authorized, the Director of
Civilian Defense may accept equipment or sup-
plies transferred from any other department
or agency of the Federal Government in con-
formity with applicable law, and may accept
donations of, or may borrow or lease facili-
ties, equipment or supplies from, states,
municipalities or other political subdivi-
sions, or from private individuals or cor-
porations. The Office of Civilian Defense
shall maintain at all times full and accurate
records of all property received by it and
of the disposition thereof. The Director
of Civilian Defense shall make adequate ar-
rangements for the storage, maintenance and
protection of all equipment, facilities and
supplies of the Office of Civilian Defense
in its possession.

"8. Within the limitations of such
funds as may be available to the Office of
Civilian Defense, the Director may arrange
with other public or private agencies for
such research or development work, in addi-
tion to that of the War Department in con-
nection with the procurement of equipment,
as he may deem advisable in order better to
provide for the adequate protection of per-
sons and property from bombing attacks,
sabotage or other war hazards.

"9. The Director of Civilian Defense
shall make available the facilities, supplies,
and services of the Office of Civilian Defense
in such localities in the United States, its
territories and possessions as he shall deter-
mine to be in need of, but unable to provide,

adequate protection of persons and property
from bombing attacks, sabotage or other war
hazards. . . . .

". . . .

"11. The equipment, facilities and sup-
plies of, or under the control of, the Office
of Civilian Defense shall be made available
in any locality only by loan to duly consti-
tuted civil authorities of any state, terri-
tory, municipality or other political sub-
division comprising or situated within such
locality, and any such authority may distri-
bute the same to responsible and qualified
individuals or organizations, in accordance
with regulations issued by the Director of
Civilian Defense; provided that it shall be
a condition of all such loans that the civil
authority to which each loan is made shall
give assurance to the Director that the prop-
erty loaned shall be adequately protected and
maintained, that it shall not be used other-
wise than for the protection of persons or
property from bombing attacks, sabotage or
other war hazards or for training or instruc-
tion incidental to such use, and that such
property unless lost, destroyed or consumed
in the course of such use shall be returned
to the United States Government at any time
upon order of, or pursuant to rules or regu-
lations prescribed by, the Director of Civil-
ian Defense.

". . . .

"Franklin D. Roosevelt

"The White House,
March 6, 1942."

Executive Order No. 8757 reads in part as follows:

"No. 8757 :

"ESTABLISHING THE OFFICE OF CIVILIAN DEFENSE
IN THE OFFICE FOR EMERGENCY MANAGEMENT OF THE
EXECUTIVE OFFICE OF THE PRESIDENT

"By virtue of the authority vested in me
by the Constitution and statutes, and in order

to define further the functions and duties of the Office for Emergency Management of the Executive Office of the President in respect to the national emergency as declared by the President on September 8, 1939, to assure effective coordination of Federal relations with State and local governments engaged in defense activities, to provide for necessary cooperation with State and local governments in respect to measures for adequate protection of the civilian population in emergency periods, to facilitate constructive civilian participation in the defense program, and to sustain national morale, it is hereby ordered as follows:

"1. There is established within the Office for Emergency Management of the Executive Office of the President the Office of Civilian Defense, at the head of which shall be a Director appointed by the President. The Director shall discharge and perform his responsibilities and duties under the direction and supervision of the President. The Director shall receive no salary or other remuneration for his services, but shall be entitled to actual and necessary transportation, subsistence, and other expenses incidental to the performance of his duties.

"2. Subject to such policies, directions, and regulations as the President may from time to time prescribe, and with such advice and assistance as may be necessary from the other departments and agencies of the Federal Government, and utilizing the operating services and facilities of such departments and agencies as far as possible, the Director shall perform and discharge the following described duties and responsibilities:

"a. Serve as the center for the coordination of Federal civilian defense activities which involve relationships between the Federal Government and State and local governments, territories, insular possessions, and the District of Columbia (as hereinafter used in this Order the term 'State and local' shall include territories, insular possessions, and the District of Columbia); establish and maintain

contact with State and local governments and
their defense agencies; and facilitate rela-
tionships between such units of government and
the agencies of the Federal Government in
respect to defense problems.

"b. Keep informed of problems which a-
rise from the impact of the industrial and
military defense effort upon local communities,
and take necessary steps to secure the coopera-
tion of appropriate Federal departments and
agencies in dealing with such problems and in
meeting the emergency needs of such communi-
ties.

"c. Assist State and local governments
in the establishment of State and local de-
fense councils or other agencies designed to
coordinate civilian defense activities.

"d. With the assistance of the Board for
Civilian Protection, described in paragraph 4
of this Order, study and plan measures design-
ed to afford adequate protection of life and
property in the event of emergency; and spon-
sor and carry out such civil defense programs,
including the recruitment and training of
civilian auxiliaries, and disseminate to ap-
propriate officials of the Federal Government
and State and local governments such informa-
tion concerning civil defense measures as may
be necessary to meet emergency needs.

"e. With the assistance of the Volunteer
Participation Committee, described in para-
graph 5 of this Order, consider proposals,
suggest plans, and promote activities de-
signed to sustain the national morale and to
provide opportunities for constructive civil-
ian participation in the defense program;
review and approve all civilian defense pro-
grams of Federal departments and agencies in-
volving the use of volunteer services in order
to assure unity and balance in the application
of such programs; and assist State and local
defense councils or other agencies in the or-
ganization of volunteer service units and in
the development of their activities.

"f. Maintain a clearing house of information on State and local defense activities in cooperation with appropriate Federal departments and agencies.

"g. Review existing or proposed measures relating to or affecting State and local defense activities, and recommend such additional measures as may be necessary or desirable to assure adequate civilian defense.

"h. Perform such other duties relating to participation in the defense program by State and local agencies as the President may from time to time prescribe.

". . . .

"6. The Director is authorized, with the approval of the President, to appoint such additional advisory committees and subcommittees, with respect to State and local cooperation, national morale, civil defense planning, civilian participation, and related defense activities, as he may find necessary or desirable to assist him in the performance of his duties. Such advisory committees may include representatives from Federal departments and agencies, State and local governments, private organizations, and the public at large. The members of advisory committees shall serve as such without compensation, but shall be entitled to actual and necessary transportation, subsistence, and other expenses incidental to the performance of their duties.

". . . .

"Franklin D. Roosevelt

"The White House
May 20, 1941"

We have received the further information from your office that the State Property Officer will receive no compensation for the duties he performs.

Section 12 of Article 16 of our State Constitution provides:

"No member of Congress, nor person hold-
ing or exercising any office of profit or
trust, under the United States, or either of
them, or under any foreign power, shall be
eligible as a member of the Legislature, or
hold or exercise any office of profit or trust
under this State."

Section 33 of Article 16 of our State Constitution
provides:

"The Accounting Officers of this State
shall neither draw nor pay a warrant upon the
Treasury in favor of any person, for salary
or compensation as agent, officer or appointee,
who holds at the same time any other office
or position of honor, trust, or profit, under
this State or the United States, except as
prescribed in this Constitution. . . ."

The Legislature of Texas has not authorized the
expenditure of any state funds for the aid of the Office
of Civilian Defense in the matter inquired about. Nor has
the Legislature of Texas made any appropriation to take care
of such matters. Besides no appropriation would be valid
unless there was a pre-existing law authorizing same. See
Section 44, Article 3, Texas Constitution, and the case of
Austin National Bank v. Sheppard, 123 Tex. 272, 75 S. W. (2d)
212.

We have carefully examined the appropriation bill
for the current biennium and have been unable to find any
appropriation from which the Governor or Adjutant General
could pay the bond premiums for the State Property Officer
mentioned in your letter, or for any other expense connected
with the Office of Civilian Defense.

In answer to your first question, it is our opin-
ion that the Governor can appoint a private individual as
State Property Officer for the Office of Civilian Defense.
The Governor does not derive this power from the Legisla-
ture of Texas as Governor of Texas, but derives same from
the Federal Government.

In answer to your second question it is our opin-
ion that the Adjutant General of Texas cannot hold the
office of State Property Officer for the Office of Civilian
Defense because Section 12 of Article 16 of our State Con-

stitution prohibits a State officer from holding an office of trust or profit under the United States. It is our opinion that the office of State Property Officer for the Office of Civilian Defense is an office of trust created under the laws of the United States and is a Federal office and not a State office. It could not be a State office because it was not created by the Constitution or statutes of the State of Texas.

In answer to your third question, it is our opinion that an employee in the Adjutant General's office (not being a State officer) could be appointed and hold the office of State Property Officer for the Office of Civilian Defense, but if he did so he would not be entitled to receive any pay from the State of Texas for his services as a State employee. See Section 33 of Article 16, Texas Constitution.

It is our opinion that your fourth and fifth questions should be answered in the negative, and are so answered.

In answer to your sixth question it is our opinion that the Governor could appoint a member of the Office of Civilian Defense staff as State Property Officer for the Office of Civilian Defense.

We wish to point out, however, that you would not be authorized to sign the agreement requested of you enclosed in your letter because:

1. You have not been authorized by the Legislature of Texas to execute such agreement on behalf of the State of Texas and therefore you cannot truly certify as required by said agreement: ". . . That I am Governor of _____, hereafter referred to as the 'State,' and as such I am duly authorized on its behalf to execute this agreement."

2. The agreement binds the State for various expenses for storage, protection, etc. of equipment. There is no pre-existing State law authorizing such expense nor any State appropriation for same or for any other purpose connected with the matter inquired about.

We are returning herewith the papers you sent us with reference to the matter.

Very truly yours

ATTORNEY GENERAL OF TEXAS

By       *Wm. J. Fanning*

Wm. J. Fanning
Assistant

EJY:GO

ENCLOSURE

APPROVED JUL 14, 1942

*Gerald C. Mann*

ATTORNEY GENERAL OF TEXAS

APPROVED
OPINION
COMMITTEE
BY _____
CHAIRMAN